IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JOSEPH MICHAEL KISH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-06-2389 |
| | § | |
| DAVID A. ROGERS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

The United States intervened in a small-claims court action filed by Joseph Michael Kish against David Rogers, Dennis Middleton, and Research Mannikins, Inc. in the Justice of the Peace Court Precinct 1 in Grimes County, Texas. The United States then removed the action to this court and asserted claims against Kish to recover unpaid federal income taxes for the 2000, 2001, 2002, and 2003 tax years, as well as interest and penalties. In response, Kish, who is representing himself, argued that the Internal Revenue Service (IRS) recorded an unlawful Notice of Lien against his property in Grimes County and defrauded him of money to which he is rightfully entitled.

Kish has filed a "Petition for Relief and Remedy." (Docket Entry No. 46). The United States has responded, (Docket Entry No. 54), and Kish has replied, (Docket Entry No. 58). Kish has also moved for a jury trial. (Docket Entry No. 60).

The United States has moved to amend its complaint to add Jan Kish, Kish's ex-wife, as a party to the action in order to foreclose on stock certificates that it seized from Kish, but

which bear Jan Kish's name. (Docket Entry No. 45). The United States has also moved for summary judgment as to its claims. (Docket Entry No. 59). Kish has responded, (Docket Entry No. 61); the United States has replied, (Docket Entry No. 62); and Kish has surreplied, (Docket Entry No. 63).

Based on the motions, responses, and replies; the parties' submissions; and the applicable law, this court grants the United States's motion to amend; denies Kish's petition for relief; and grants the United States's motion for summary judgment. Kish's motion for a jury trial is denied as moot.

**I.     Background**

Kish designs and sculpts models for life-size animal mannequins for taxidermy supply companies such as Precision Mannequins, Inc. and Research Mannikins, Inc. In 2000, Kish sold to Precision Mannequins the copyrights to certain models that he had created. The price was $210,000. In May 2001, Kish and Research Mannikins entered into a "Research Mannikins Sculptor Royalty Agreement." Under this agreement, Research Mannikins manufactures and sells taxidermy pieces using Kish's models and pays him a 10% royalty from each sale. The royalty payments are made quarterly and have averaged between $20,000 to $25,000 per year. The parties' agreement provides that Research Mannikins will make royalty payments to Kish "in perpetuity."

**A.     Tax Year 2000**

In tax year 2000, despite receiving $210,000 from Precision Mannequins for his copyrighted models, Kish filed a federal income tax return with zeroes on all the lines.

(Docket Entry No. 13, Ex. 2). When the IRS informed Kish that this was a frivolous return, he refiled the same return with zeroes on all the lines and wrote "NOT LIABLE" across the first page. (Docket Entry No. 59, Ex. 4).

The IRS determined that for the 2000 tax year, Kish had taxable income of $246,213.00 and a tax liability of $99,406.00. (Docket Entry No. 59, Ex. 5). On August 13, 2003, the IRS issued Kish a statutory Notice of Deficiency. (*Id.*, Ex. 5). This notice informed Kish of his outstanding tax liability and instructed him to petition the tax court within ninety days from the date of the notice letter if he wanted to contest the IRS's deficiency determination before making any payment. Kish did not petition the tax court. The IRS's records show that after Kish's "default" under the IRS's ninety-day letter, on April 19, 2004 a delegate of the Secretary of the Treasury assessed interest and penalties and gave Kish notice and demand for tax, penalties, and statutory additions due for tax year 2000. (*Id.*, Ex. 15). The records also show additional penalties and interest assessed in following years. (*Id.*).

**B.     Tax Year 2001**

In the 2001 tax year, Kish filed a federal income tax return reporting $28,210 in income and $6,008 owed in tax. (Docket Entry No. 59, Ex. 13). He did not pay any amount of tax. (Docket Entry No. 59 at 5).

The IRS determined that for the 2001 tax year, Kish had taxable income of $20,760 and a tax liability of $6,195.00. (Docket Entry No. 59, Ex. 16). The IRS's records show that on April 28, 2004, after Kish's "default" under a ninety-day notice letter, a delegate of

the Secretary of the Treasury assessed interest and penalties and gave Kish notice and demand for tax, penalties, and statutory additions due for the 2001 tax year. (*Id.*). The records also show additional penalties and interest assessed in following years. (*Id.*).

### C.     Tax Year 2002

In the 2002 tax year, Kish did not file a federal income tax return. (Docket Entry No. 59, Ex. 14 at 49). The IRS determined that for the 2002 tax year, Kish had taxable income of $17,188.00 and a tax liability of $5,654.00. (Docket Entry No. 59, Exs. 7, 17). On June 8, 2004, the IRS issued a statutory Notice of Deficiency to Kish. (*Id.*, Ex. 7). Like the previous notice, the IRS's letter informed Kish of his outstanding tax liability and instructed him to petition the tax court within ninety days from the date of the letter if he wished to contest the IRS's deficiency determination before making any payment. Kish did not petition the tax court. The IRS's records show that the ninety-day letter was "undeliverable." On November 8, 2004, a delegate of the Secretary of the Treasury assessed interest and penalties and gave notice and demand against Kish for tax, penalties, and statutory additions due for the 2002 tax year. (*Id.*, Ex. 17). The records also show additional penalties and interest assessed in following years. (*Id.*).

For tax years 2000, 2001, and 2002, the IRS's records show that on May 14, 2005, a "levy notice" was issued; on May 31, 2005 a "return receipt" for the notice was signed; and on July 15, 2005 a federal tax lien was issued. (Docket Entry No. 59, Exs. 15, 16, 17). On July 19, 2005, the IRS recorded a notice of federal tax lien against Kish in the property records of Grimes County, Texas. (*Id.*, Ex. 19). The lien listed an unpaid balance of

$166,221.36 for tax year 2000; an unpaid balance of $9,830.27 for tax year 2001; an unpaid balance of $8,160.74 for tax year 2002; and an unpaid balance of $500 as a penalty for filing a frivolous income tax return for tax year 2000. (*Id.*). The IRS's records further show that for tax years 2000, 2001, and 2002, another statutory notice of the balance owed to the IRS was issued on June 19, 2006. (Docket Entry No. 13, Ex. 15).

### D.     Tax Year 2003

In the 2003 tax year, Kish filed a blank federal income tax return on which he had written, "NOT REQUIRED." (Docket Entry No. 59, Ex. 8). The IRS determined that for the 2003 tax year, Kish had taxable income of $20,764.00 and a tax liability of $3,585.00. The IRS's records show on February 25, 2005, after Kish's "default" under a ninety-day notice letter, a delegate of the Secretary of the Treasury assessed interest and penalties and gave notice and demand against Kish for tax, penalties, and statutory additions due for the 2003 tax year. (Docket Entry No. 59, Ex. 18). The records also show that on April 10, 2006, a penalty of $500 for filing a frivolous income tax return was assessed and a statutory notice was issued. (*Id.*).

The IRS records further show that on October 17, 2005 and on April 10, 2006, statutory notices of the balance owed to the IRS for tax year 2003 were issued. The records show that on December 21, 2005, notice of an intent to levy for Kish's tax liability for tax year 2003 was issued. On May 15, 2006, a notice of intent to levy for Kish's liability for the $500 penalty was issued. (Docket Entry No. 59, Ex. 18).

On December 13, 2005, the IRS issued to Research Mannikins a notice of levy.

5

(Docket Entry No. 59, Ex. 20). The notice listed an unpaid balance of $166,827.96 for tax year 2000; an unpaid balance of $9,830.27 for tax year 2001; an unpaid balance of $8,160.74 for tax year 2002; and a penalty of $321.85 for tax year 2000. (*Id.*). The notice also provided details of "Statutory Additions" for each unpaid balance that brought the total amount due to $210,876.10. The notice explained that it was "a notice of levy we [the IRS] are using to collect money owed by the taxpayer named above [Kish]" and that "[t]his levy requires you to turn over to us" Kish's wages, salary, or other income for which Research Mannikins is obligated "until this levy is released." (*Id.*).

Kish wrote to Middleton and Rogers, the principals of Research Mannikins, and asked them not to comply with the IRS tax levy. In his letter, Kish asserted that the levy was fraudulent and void because the levy failed to "cite a statute on which it is based" and because "[t]he IRS has NO authority to levy without a court order." (Docket Entry No. 59, Ex. 9). Kish stated that "[t]he IRS has NO authority to levy a person in the private sector," and that "[o]nly public sector employees are subject to levy." (*Id.*). Kish further asserted that Middleton and Rogers did not have to comply with the levy because the text of the notice, which specified "wages and salary," did not cover Research Mannikin's royalty payments to Kish. (*Id.*).

Research Mannikins complied with the levy and sent the royalty payments to the IRS, Kish sued Research Mannikins and its principals in small-claims court on June 8, 2006. The United States filed and was granted a motion to intervene in the small-claims court action under 26 U.S.C. § 7424. The United States removed to this court on July 18, 2006, (Docket

Entry No. 1), and was granted leave to file a complaint in intervention, (Docket Entry No. 29).

On November 8, 2006, this court dismissed with prejudice Kish's claims against David Rogers, Dennis Middleton, and Research Mannikins, Inc. (Docket Entry No. 29). On February 27, 2007, the United States filed its complaint against Kish, seeking to reduce to judgment Kish's federal tax liabilities and to establish that the United States has valid liens on Kish's royalty payments from Research Mannikins. (Docket Entry No. 31).

The United States later discovered that Kish held stock certificates for 999 shares of General Electric and 134 shares of Altria/Philip Morris stock. This court approved the United States's attachment and seizure of these stock certificates, making it clear that the United States had to hold the certificates and could not sell or otherwise dispose of them until the merits of the claims and defenses were decided. (Docket Entry No. 39). The stock certificates are currently held in escrow. (Docket Entry No. 54 at 4). The United States has moved to amend its complaint to add Jan Kish as a party to this action because the stock certificates bear her name. (Docket Entry No. 45).

## II.     The Legal Standards

### A.     The Rule 15 Standard for Leave to Amend

Rule 15(a) states that a party may amend the party's pleading once without seeking leave of court or the consent of the adverse party at any time before a responsive pleading is served. After a responsive pleading is served, a party may amend only by "leave of court or by written consent of the adverse party." *Id*. Although leave to amend pleadings "shall

be freely given when justice requires," FED. R. CIV. P. 15(a), leave to amend "is not automatic." *Matagorda Ventures Inc. v. Travelers Lloyds Inc. Co.*, 203 F.Supp.2d 704, 718 (S.D. Tex. 2000) (citing *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 598 (5th Cir. 1981)). A district court reviewing a motion to amend pleadings under Rule 15(a) may consider factors such as "whether there has been 'undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party, and futility of amendment.'" *Jacobsen v. Osborne*, 133 F.3d 315, 318 (5th Cir. 1998) (quoting *In re Southmark Corp.*, 88 F.3d 311, 314–15 (5th Cir. 1996)).

Denial of leave to amend on the basis of futility is "premised . . . on the court's evaluation of the amendment as insufficient to state a claim . . . ." *Jamieson v. Shaw*, 772 F.2d 1205, 1209 (5th Cir. 1985). A denial on this basis "tends to blur the distinction between analysis of the procedural context under Rule 15(a) and analysis of the sufficiency of the complaint under Rule 12(b)(6)." *Id.* at 1208–09 (citing *Pan-Islamic Trade Corp. v. Exxon Corp.*, 632 F.2d 539, 546 (5th Cir. 1980)). Opinions frequently explicitly equate the futility analysis under Rule 15(a) with the legal sufficiency standard of Rule 12(b)(6). *See Glassman v. Computervision Corp.,* 90 F.3d 617, 623 (1st Cir. 1996) ("In reviewing for 'futility,' the district court applies the same standard of legal sufficiency as applies to a Rule 12(b)(6) motion."); *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1434 (3d Cir. 1997); *General Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1085 (7th Cir. 1997).

### B.    The Summary Judgment Standard

Summary judgment is appropriate if no genuine issue of material fact exists and the

moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56. The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Lincoln Gen. Ins. Co. v. Reyna*, 401 F.3d 347, 349 (5th Cir. 2005). When the moving party has met its Rule 56(c) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings. The nonmovant must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim. *Johnson v. Deep E. Tex. Reg'l Narcotics Trafficking Task Force*, 379 F.3d 293, 304 (5th Cir. 2004). The nonmovant must do more than show that there is some metaphysical doubt as to the material facts. *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Calbillo v. Cavender Oldsmobile, Inc.*, 288 F.3d 721, 725 (5th Cir. 2002). "Rule 56 'mandates the entry of summary judgment, after adequate time for discovery, and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (quoting *Celotex*, 477 U.S. at 322).

Kish argues that "the power to exert the authority of the people rests in juries pursuant to the Constitution." (Docket Entry No. 61 at 1). The Supreme Court has rejected the

argument that summary judgment contravenes the Seventh Amendment. *In re Peterson*, 253 U.S. 300, 310 (1920) ("No one is entitled in a civil case to trial by jury, unless and except so far as there are issues of fact to be determined."). Summary judgment is appropriate if there are no material issues of fact in the case.

**III.   Analysis**

    **A.   The United States's Motion to Amend Its Complaint**

The United States has moved for leave to amend its complaint to add Jan Kish, Kish's ex-wife, as a party to this action. (Docket Entry No. 45). Although Kish asserts that the stock certificates seized under this court's order are his property, the certificates bear Jan Kish's name.

Kish has not responded to the motion to amend. Because the United States first learned of the stock certificates during discovery and moved to amend its complaint within one month after this court's order authorizing the seizure of the stock certificates, it did not delay or act in bad faith. The United States points out that it has not repeatedly failed to cure deficiencies by previous amendments. There is no undue prejudice to Kish from allowing the proposed amendment because adding Jan Kish as a party to resolve the claim to the stock certificates does not affect Kish's arguments about his federal income tax liability. There is no basis to conclude that the proposed amendment is futile.

The motion for leave to file an amended complaint is granted.

    **B.   Kish's Petition for Relief and Remedy and the United States's Summary Judgment Motion**

In his Petition for Relief and Remedy and throughout his filings in this litigation, Kish

argues that the lien filed against his property in the Grimes County property records and the levy on the Research Mannikins royalty payments are fraudulent and invalid.  Kish challenges the lien and levy on a variety of grounds.  Basically, Kish denies that he is subject to the Internal Revenue Code and asserts that the United States has failed to show what statute makes him liable for a tax deficiency.  (Docket Entry No. 58 at 3; Docket Entry No. 61 at 2).  Kish argues that because the lien cites no law that authorizes such a lien, the lien is invalid.  (Docket Entry No.46 at 2).  Kish also challenges the levy on the ground that it applies only to persons "liable to pay" and argues that he is not.  (Docket Entry No. 46 at 3; Docket Entry No. 61 at 15).  He supports his contention that he is not liable for any tax by arguing that he never received an assessment from the IRS showing what taxes he owes.  (Docket Entry No. 46 at 2).  Kish also argues that the levy applies only to "wages and salary," and asserts that the royalty payments from Research Mannikins do not qualify.  (Docket Entry No. 63 at 3).  Kish further argues that he does not engage in a taxable activity or privilege and that he is therefore not subject to federal income tax.  He asserts that he "engages in an occupation of common right, which is not taxable in the 50 states."  (Docket Entry No. 58 at 2).[1]

---

[1]Kish also challenges this court's jurisdiction over the case. (Docket Entry No. 58 at 4). This court already addressed these challenges in its memorandum and opinion of November 8, 2007, in which this court found that it has jurisdiction under 28 U.S.C. § 1340, which provides district courts jurisdiction over civil actions arising under any act of Congress for internal revenue, and § 1345, which provides district courts jurisdiction over civil actions commenced by the United States under congressional authority. (Docket Entry No. 29). Kish raises no new arguments to challenge jurisdiction. This court will not revisit the issue.

In addition, Kish relies on 26 U.S.C. § 7501 to argue that the United States is improperly attempting "to reclaim trust fund taxes" through its levy on the Research Mannikins royalty payments. Because the United States does not rely on section 7501 in its summary judgment motion and does not argue that Kish is "a trustee of a special fund in trust for the United States," as Kish suggests, (Docket Entry No. 63 at 5), this court will not address these arguments.

11

In its summary judgment motion, the United States argues that Kish is indebted to the United States for the federal income taxes assessed against him for the 2000, 2001, 2002, and 2003 tax years, plus interest and statutory additions. To support its arguments, the United States points to the IRS's Forms 4340, Certificate of Assessments and Payments, which show the assessments against Kish for each tax year. Citing *Stallard v. United States*, 12 F.3d 489, 493 (5th Cir. 1994), the United States argues these certificates are presumptively correct and entitled to great weight absent evidence to the contrary. Each Form 4340 shows the taxable income Kish received for that tax year, the amount of tax owed, and the penalties and interest assessed, and the date of each action the IRS took regarding Kish's tax liability, including when penalties were assessed and when notice of the deficiency was given. The United States points out that Kish failed to petition the tax court to challenge any determination of deficiency.

The United States also argues that the federal tax lien that it recorded in the Grimes County property records and the levy against the Research Mannikins royalty payments are valid. Title 26 U.S.C. § 6321 provides:

> If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.

Title 26 U.S.C. 6331 provides:

> If any person liable to pay any tax neglects or refuses to pay the same within 10 days after notice and demand, it shall be lawful

12

> for the Secretary to collect such tax . . . by levy upon all property and rights to property . . . belonging to such person or on which there is a lien provided in this chapter for the payment of such tax. Levy may be made upon the accrued salary or wages of any officer, employee, or elected official . . . .

Citing *United States v. National Bank of Commerce*, 472 U.S. 713, 719 (1985), the United States asserts that a § 6321 federal tax lien arises on the date of assessment and continues until the underlying tax liability is paid or becomes unenforceable. The United States argues that the record shows that the IRS made assessments and gave notice and demand against Kish for the 2000, 2001, 2002, and 2003 tax years. Following the assessments for the 2000, 2001, and 2002 tax years, the United States filed a Notice of Federal Tax Lien for Kish's federal tax liabilities for those years in the Grimes County property records. The United States argues that under 26 U.S.C. 6331, the lien attaches to the Research Mannikins royalty agreement and the stock shares seized from Kish, and that under 26 U.S.C. § 6331, the levy on the Research Mannikins royalty payments was validly made on property in which Kish has an interest and on which there was a valid lien.

Kish's arguments that he is not subject to the Internal Revenue Code because "[c]ode citations are not law" are not persuasive. (Docket Entry No. 58). Title 1 U.S.C. § 204(a) provides that "[t]he matter set forth in the edition of the Code of Laws of the United States current at any time shall . . . establish prima facie the laws of the United States." Kish cites no contrary law to show that he is not subject to the laws of the United States, including the Internal Revenue Code, as codified in the United States Code. Although Kish contends that "[c]ode citations . . . are mere prima facie evidence of law," (Docket Entry No. 58), he fails

13

to make any rebuttal or contrary showing to such *prima facie* evidence. He utterly fails to show that the Internal Revenue Code does not apply to him. Kish's challenge to the validity of the United States Code and to the United States's authority under the Internal Revenue Code fails.

In Title 26 U.S.C. § 1, Congress "imposed on the taxable income of every individual who is not a married individual . . . a tax determined in accordance with the following table." *See also Rhodes v. C.I.R.*, 152 Fed.Appx. 340, 341 (5th Cir. 2005) ("The Constitution grants Congress the power to tax 'incomes . . . from whatever source derived . . . .' The federal income tax is to be imposed upon every citizen and resident of the United States.") (citing 26 U.S.C. § 1). "Taxable income" is defined as "gross income minus the deductions allowed by this chapter." 26 U.S.C. § 63. Gross income is defined as "all income from whatever source derived, including . . . (1) Compensation for services, including fees, commissions, fringe benefits, and similar items; (2) Gross income derived from business; . . . [and] (6) Royalties . . . ." 26 U.S.C. § 61. By definition, taxable income includes compensation for services and royalties. Kish has failed to show that his royalty payments from Research Mannikins are not subject to tax under the Internal Revenue Code.[2]

Kish's challenges to the validity of the lien against his property and the levy on the

---

[2] Kish argues that he does not engage in a taxable activity. He asserts that he "engages in an occupation of common right, which is not taxable in the 50 states." (Docket Entry No. 58 at 2). To support this argument, Kish cites *Jack Cole Co. v. MacFarland*, 337 S.W.2d 453, 456 (Tenn. 1960), a case in which the Tennessee Supreme Court held that "the right to receive income or earnings . . . cannot be taxed as privilege." When *Jack Cole* was decided, Tennessee's Constitution prohibited a tax on income. The Tennessee Constitution has since been amended to allow a tax on income. The *Jack Cole* analysis is not pertinent to this case and does not show that the royalty payments from Research Mannikins are not subject to tax under the Internal Revenue Code.

14

Research Mannikins royalty payments are similarly unpersuasive. As the United States points out, a federal tax lien "arises when an assessment is made, and it continues until the taxpayer's liability is satisfied or becomes unenforceable." *Nat'l Bank of Commerce*, 472 U.S. at 719. A valid lien exists under 26 U.S.C. § 6321 regardless of whether the notice provided to the taxpayer cites legal authority. Kish's argument that he has no tax liability because he never received a tax assessment from the IRS also fails. (Docket Entry No. 58 at 3–4). The Fifth Circuit has rejected the contention that an assessment must precede tax liability. *See Rhodes*, 152 Fed.Appx. at 341 (5th Cir. 2005) ("That the Commissioner had not made an assessment against [the taxpayer] does not preclude a deficiency finding."); *In re Swift*, 129 F.3d 792, 799 n.41 (5th Cir. 1997) ("An assessment is not a prerequisite to tax liability.").[3]

As the Supreme Court has recognized, the statutory language "all property and rights to property"—which appears in both section 6321, authorizing tax liens, and section 6331, authorizing levies—is "broad and reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *Nat'l Bank of Commerce*, 472 U.S. at 719–20. Kish's argument that the levy applies only to wages and salary, and not to royalties,

---

[3] Kish acknowledges that the United States has provided him with a "Certificate of Assessments, Payments, and Other Specified Matters" (IRS Form 4340) for each tax year in dispute. (Docket Entry No. 59, Exs. 15–18). Although he admits that Form 4340 is "prima facie evidence of an assessment," (Docket Entry No. 61 at 6), Kish fails to rebut such *prima facie* evidence. He only challenges the authenticity of the forms, arguing that the forms do not have a seal affixed to them and that they are not "signed under penalty of perjury, or otherwise attested to as authentic or reliable." (Docket Entry No. 61 at 5–6). The Fifth Circuit has held that the law "does not mandate any particular form of notice" of a deficiency. *Selgas v. C.I.R.*, 475 F.3d 697, 700 (5th Cir. 2007). "[A] notice of deficiency is valid as long as it informs a taxpayer that the IRS has determined that a deficiency exists and specifies the amount of the deficiency." *Id.*

relies on an incomplete reading of the notice of levy and the instructions provided to Research Mannikins. The notice of levy stated that "[t]his levy requires you to turn over to us: . . . this taxpayer's other income that you have now or for which you are obligated." (Docket Entry No. 59, Ex. 20). The instructions that accompanied the notice told Research Mannikins that "[f]or income other than wages and salary . . . this levy attaches to all obligations you owe the taxpayer at the time you receive it, even though you plan to make the payment at a later date." (Docket Entry No. 63, Ex. 1). Kish has not shown how this language exempts or fails to cover Research Mannikins's royalty payments to him.

The United States has shown that Kish is liable to the United States for federal income taxes assessed against him for the 2000, 2001, 2002, and 2003 tax years, plus interest and statutory additions. The United States has shown that a valid lien exists on Kish's property and that the IRS levy on Kish's royalty payments from Research Mannikins is proper. Kish has failed to show that a fact issue exists regarding his tax liability or the validity of the tax lien and levy on the royalty payments.

### III.     Conclusion

The United States' motion to amend its complaint is granted. The United States's summary judgment is granted. Kish's Petition for Relief and Remedy is denied. Kish's motion for a jury trial is denied as moot.

The United States has asked for an order foreclosing the tax liens and directing sale of the stock shares. Because the shares are in Jan Kish's name, and because she is now a party to this case, the United States is directed to submit a proposed scheduling order to

resolve the remaining issues in this case. The order must be submitted no later than November 9, 2007.

       SIGNED on October 22, 2007, at Houston, Texas.

                                                 _____
                                                       Lee H. Rosenthal
                                         United States District Judge